FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

NICHOLAS R. GOSSI,
    *Defendant-Appellant.*

No. 09-30202
D.C. No.
1:08-CR-104-S-EJL
OPINION

Appeal from the United States District Court
for the District of Idaho
William F. Downes, District Judge, Presiding

Argued and Submitted
February 5, 2010—Seattle, Washington

Filed June 15, 2010

Before: Arthur L. Alaracón, William A. Fletcher, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Alarcón

UNITED STATES v. GOSSI     8781

## COUNSEL

Robert A. Wallace, Boise, Idaho, for the defendant-appellant.

George W. Breitsameter, Assistant United States Attorney, Office of the United States Attorney, Boise, Idaho, for the plaintiff-appellee.

## OPINION

ALARCÓN, Circuit Judge:

Nicholas R. Gossi appeals from a restitution order imposed pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, following his guilty plea to Mail Fraud in violation of 18 U.S.C. § 1341. Gossi contends the district court failed "to use the true return date in offsetting the value of [the] returned property." He also maintains that the district court erred in "treat[ing] [him] more harshly than all other codefendants" and in ordering him to pay restitution more than "[o]nly [i]ntended, [f]oreseeable and [c]ulpable [l]osses." We affirm because we conclude that the district court's valuation of the property was within the discretion afforded district courts. We also hold that the district court correctly ordered Gossi to pay restitution based on losses proximately resulting from his criminal conduct.

I

On May 14, 2008, a federal grand jury returned a thirty-two count indictment charging Gossi and his four co-defendants with bank fraud. In addition, Gossi was charged with mail fraud and making a false statement of material fact to the Department of Housing and Urban Development ("HUD"). On September 22, 2008, Gossi pled guilty to the count that charged him with mail fraud in violation of 18 U.S.C. § 1341.[1]

---

[1] In return for Gossi's guilty plea, the government dismissed all remaining counts on the indictment against Gossi.

UNITED STATES v. GOSSI                    8783

On March 13, 2009, Gossi was sentenced to imprisonment for six months followed by a period of six months home detention. In addition, Gossi was ordered to be placed on supervised release for a period of five years.

The district court entered a restitution order directing Gossi to pay National City Mortgage Company ("NCMC") the amount of $288,087.12. In reaching this amount, the district court explained:

> The "Actual Unpaid Principal Balance of the Mortgage Loan," according to [NCMC's] own balance sheet, was actually $704,087.12 at the time it took possession of the property. The Total Realized Loss includes $156,174.71 in fees and expenses accrued after the property was returned. The Court thus finds that $704,087.12 accurately reflects the value of the property taken on the date of loss pursuant to 18 U.S.C. § 3663A(b)(1)(B)(i)(I). The current asking price for the Dublin Drive property does not reflect the value of the property returned, on the date it was returned. The first appraisal apparent to the Court was provided to [NCMC] on November 22, 2008; it placed the value of the property at $416,000 "as is." The Court accordingly imposes upon . . . Gossi a restitution obligation in the amount of $288,087.12 ($704,087.12 - $416,000.00) pursuant to 18 U.S.C. § 3663A(b)(1)(B).

Gossi has timely appealed from the district court's order. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

Gossi contends that the district court erred in determining the return date of the property for purposes of assessing the value of the property. He asserts that the district court should have assigned value "when the bank could and should have

| 8784 | United States v. Gossi |
|---|---|

initiated foreclosure" rather than when it actually foreclosed. (Appellant's Br. 10.) According to Gossi, this is when the property should have been considered to be returned, i.e., "when the bank knew the loan was in trouble and had the legal right to initiate [foreclosure] proceedings." (*Id.* at 11.) Gossi also contends that the district court refused to set an earlier return date because "the restitution calculation of the court was driven, in part, by considerations of fault rather than evidence of property value . . . ." (*Id.*)

"A restitution order is reviewed for an abuse of discretion, provided that it is within the bounds of the statutory framework. Factual findings supporting an order of restitution are reviewed for clear error. The legality of an order of restitution is reviewed de novo." *United States v. Gordon*, 393 F.3d 1044, 1051 (9th Cir. 2004) (quoting *United States v. Stoddard*, 150 F.3d 1140, 1147 (9th Cir. 1998)).

[1] "Federal courts have no inherent power to award restitution, but may do so only pursuant to statutory authority." *United States v. Follet*, 269 F.3d 996, 998 (9th Cir. 2001) (citing *United States v. Hicks*, 997 F.2d 594, 600 (9th Cir. 1993)). "The courts have such authority under the Victim and Witness Protection Act of 1982 ("VWPA"), providing for discretionary awards of restitution after conviction for certain crimes, 18 U.S.C. § 3663, and under the Mandatory Victims Restitution Act of 1996 ("MVRA"), providing for mandatory restitution for crimes of violence and property offenses, 18 U.S.C. § 3663A."[2] *Id.*

"[T]he starting point for interpreting a statute is the language of the statute itself." *United States v. Hackett*, 311 F.3d 989, 991 (9th Cir. 2002) (quoting *Consumer Prod. Safety*

---

[2] 18 U.S.C. § 3663(b)(2), or the VWPA, and 18 U.S.C. § 3663A(b)(2), or the MVRA, are nearly identical and "courts interpreting the MVRA may look to and rely on cases interpreting the VWPA as precedent." *Gordon*, 393 F.3d at 1048.

*Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). "Absent congressional direction to the contrary, words in statutes are to be construed according to 'their ordinary, contemporary, common meaning[s].' " *Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)).

[2] In *United States v. Davoudi*, 172 F.3d 1130 (9th Cir. 1999), we stated that, pursuant to the restitution statute,

> [t]he district court is authorized by 18 U.S.C. § 3663(b)(1)(B)(ii) to order restitution in the amount of the victim's loss "less the value (as of the date the property is returned) of any part of the property that is returned." *This court has held that this plain language requires property to be valued as of the date the victim took control of the property.* See [*United States v. Smith*, 944 F.2d 618, 624-625 (9th Cir. 1991)]. "As of that date, the [secured lender] had the power to dispose of the property and receive compensation." *Id.* at 625. Accord *United States v. Catherine*, 55 F.3d 1462, 1465 (9th Cir. 1995); *United States v. Hutchison*, 22 F.3d 846, 856 (9th Cir. 1993) ("In *Smith*, . . . [w]e rejected the district court's valuation of the property as of the date on which it was sold."). Under *Smith* and its progeny the district court should have based the restitution to HSA on the fair market value of the Bel Air property at the time HSA *"had the power to dispose of the property" as it wished.*

*Id.* at 1134-35 (emphasis added).

[3] Under this Court's precedent, the district court reasonably found that NCMC had the power to dispose of the property at the time it took control of the property at foreclosure. "Value should therefore be measured by what the financial institution would have received in a sale as of that date."

Case 1:08-cr-00104-EJL   Document 189   Filed 06/15/10   Page 7 of 14
Case: 09-30202   06/15/2010   Page: 7 of 14   ID: 7372066   DktEntry: 23-1

8786                UNITED STATES v. GOSSI

*Smith*, 944 F.2d at 625. Contrary to Gossi's contention, the district court could not have set the value of the property based on appraisals *prior* to foreclosure simply because NCMC did not have "the power to dispose of the property and receive compensation" before foreclosure. *Id.* Whether the district court also considered Gossi's fault in imposing restitution is of no moment to the district court's finding because the district court reasonably valued the property in accordance with this Court's precedent. Nothing in the record indicates that NCMC "had the power to dispose of the property as it wished" prior to foreclosure. *Davoudi*, 172 F.3d at 1135 (internal quotation marks omitted).

The district court did not abuse its discretion in determining the amount of restitution.

### III

[4] Gossi next argues that the district court also erred because the restitution obligations imposed on his co-defendants, who pled guilty to a different fraud scheme, required them to pay lesser amounts. However, as the government points out, the restitution obligations of co-defendants are irrelevant to Gossi's restitution obligation. Gossi was the only defendant to enter a guilty plea to defraud NCMC. The other co-defendants pled guilty to offenses involving a separate entity, Zions Bank. The district court reasonably set restitution in favor of NCMC pursuant to § 3664(f)(1)(A), which states:

> In each order of restitution, *the court shall order restitution to each victim in the full amount of each victim's losses* as determined by the court and without consideration of the economic circumstances of the defendant.

18 U.S.C. § 3664(f)(1)(A) (emphasis added). Accordingly, the

district court did not abuse its discretion in ordering Gossi to pay restitution to NCMC for the full amount of its losses.[3]

## IV

Gossi also argues that the district court committed error because he only should be responsible to pay restitution for the *reasonably foreseeable harm* as opposed to the *direct and proximate harm* that resulted from his mail fraud offense. Gossi asserts that "[o]nly [i]ntended, [f]oreseeable and [c]ulpable [l]osses should [c]ount." (Appellant's Br. 14.)

[5] "[R]estitution can only include losses directly resulting from a defendant's offense." *Stoddard*, 150 F.3d at 1147 (quoting *United States v. Sablan*, 92 F.3d 865, 870 (9th Cir. 1996)). "For that reason, 'a restitution order must be based on losses directly resulting from the defendant's criminal conduct.' " *Id.* (quoting *Sablan*, 92 F.3d at 870).

"A victim for restitution purposes is a person who has suffered a 'loss caused by the specific conduct that is the basis of the offense of conviction.' " *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 927 (9th Cir. 2001) (quoting *Hughey v. United States*, 495 U.S. 411, 413 (1990)). In *Gamma Tech*, this Court stated:

---

[3]Initially, Gossi also argued that, in its restitution order, the district court "failed to analyze his 'ability to pay' and did not order a payment plan." (Appellant's Br. 7.) However, in his reply brief, Gossi indicated that he was "withdraw[ing] the argument that his payment plan was improper." (Appellant's Reply Br. 1.) In doing so, Gossi stated:

> For purposes of payment plans, Appellant acknowledges that more detailed financial information would have allowed the court to fashion a better-tailored repayment plan. With guidance afforded by the government's brief, Appellant is expected [to] endeavor to comply with the conditions of his sentence in handling these issues with his probation officer.

(*Id.* at 1-2.)

| 8788 | UNITED STATES v. GOSSI |
|---|---|

> It is clear from our cases that the phrase "directly resulting" means that the conduct underlying the offense of conviction must have caused a loss for which a court may order restitution, but the loss cannot be too far removed from that conduct. . . . Defendant's conduct need not be the sole cause of the loss, but any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct. The causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable.

*Gamma Tech*, 265 F.3d at 928 (citations omitted).

"Under 18 U.S.C. § 3664 ('§ 3664'), a dispute as to the proper amount of restitution must be resolved by the district court by a preponderance of the evidence." *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008) (citing 18 U.S.C. § 3664(e); *United States v. Clayton*, 108 F.3d 1114, 1118 (9th Cir. 1997)). "The government bears the burden of proving that a person or entity is a victim for purposes of restitution, [*United States v. ]Baker*, 25 F.3d [1452,] 1455 [(9th Cir. 1994), *rev'd on other grounds, United States v. Lawrence*, 189 F.3d 838, 846 (9th Cir. 1999)], and of proving the amount of the loss, 18 U.S.C. § 3664(e)." *Id.*

It is undisputed that Gossi was the only defendant that pled guilty to defrauding NCMC. In determining NCMC's loss, the district court valued NCMC's returned property as of the date NCMC took control of such property (at the time of foreclosure when NCMC had the power to dispose of the property as it wished). Based on these factors, the district court ordered Gossi to pay restitution.

Gossi relies on *United States v. Zolp*, 479 F.3d 715 (9th Cir. 2007), to support his contention that he should be liable only for any intended or foreseeable harm. However, as the

UNITED STATES v. GOSSI            8789

government notes, *Zolp* dealt with sentencing, not restitution. In *Catherine*, 55 F.3d at 1464-65, we explained:

> The fact that the designation of offense level 13 is dependent upon an enhancement for the loss to the victim does not mean that this loss determination is to be utilized for purposes of determining the amount of restitution to be paid. Although . . . the guidelines, under which the defendant agreed to be sentenced, and 18 U.S.C. § 3663, governing restitution, both involve a calculation of loss to the victim, the method of calculating loss is different in each. . . . *The different method of calculating loss in each case is due to the different purposes behind the two statutes. A defendant's culpability will not always equal the victim's injury.*
>
> This distinction was highlighted in our recent opinion in *United States v. Hutchison*, 22 F.3d 846, 854-56 (9th Cir. 1993) [*abrogated on other grounds, United States v. Wells*, 519 U.S. 482 (1997)], another false loan application case. In *Hutchison*, we reached different results in calculating loss for purposes of confinement and loss for purposes of victim restitution. Relying on the intended loss, which in that case was greater than the actual loss, we calculated the loss for custodial sentencing under [U.S.S.G.] section 2F1.1 as the gross loan amount, with no offset for actual payments made on the loan or the value of the forfeited collateral. In contrast, we held the amount of restitution to be paid under 18 U.S.C. § 3663 was the *actual loss*, which we held must be calculated as the unpaid balance on the loan, minus the value of the collateral at the date the victim bank gained control of the collateral, plus the bank's expenses prior to the same date.

*Id.* (emphasis added).

| 8790 | UNITED STATES v. GOSSI |
|---|---|

[6] Sentencing, unlike restitution, focuses on the criminal defendant. 18 U.S.C. § 3553, which lists the factors to be considered when sentencing a defendant under the advisory Sentencing Guidelines, explains the purposes of sentencing. Section 3553(a) states:

> (a) Factors to be considered in imposing a sentence. — *The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.* The court, in determining the particular sentence to be imposed, shall consider—
>
> . . . .
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2)(A)-(D) (emphasis added). Clearly, § 3553 focuses on the individual criminal defendant. In sentencing a defendant, the advisory Sentencing Guidelines require only that the greater of the *actual or intended loss* be applied in computing the offense level when sentencing the defendant. See U.S.S.G. § 2B1.1. Under the Guidelines,

UNITED STATES v. GOSSI                 8791

" '[a]ctual loss' means [only] the *reasonably foreseeable* pecuniary harm that resulted from the offense." *Id.* at application n.3(A)(i) (emphasis added).

Restitution, on the other hand, focuses on the victim and the harm *proximately caused* by the defendant's conduct. In *Gordon*, we explained that

> The primary and overarching goal of the MVRA is to make victims of crime whole. In achieving this objective, Congress intended district courts to engage in an expedient and reasonable restitution process, with uncertainties resolved with a view toward achieving fairness to the victim. . . .
>
> The MVRA makes restitution mandatory for particular crimes, including those offenses which involve fraud or deceit. *See* 18 U.S.C. § 3663A(c)(1)(A)(ii). Under the MVRA, a court must order restitution to each victim of an offense, and the court cannot consider the defendant's economic circumstances. *See* 18 U.S.C. § 3664(f)(1)(A). The prior restitution statue, the Victim and Witness Protection Act ("VWPA"), required courts to consider the economic circumstances of the defendant prior to ordering restitution, and the grating of restitution was discretionary, not mandatory. *See* 18 U.S.C. § 3663. . . .
>
> [W]e are presented with a statute[,] the primary and overarching goal of which is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being . . . .

*Gordon*, 393 F.3d at 1048, 1053 (quotation marks omitted). Rejecting the argument that the Guidelines should be used in calculating a loss for restitution purposes, in *Gordon*, we observed:

Case 1:08-cr-00104-EJL  Document 189  Filed 06/15/10  Page 13 of 14
Case: 09-30202  06/15/2010  Page: 13 of 14  ID: 7372066  DktEntry: 23-1

8792        UNITED STATES v. GOSSI

> Gordon argues that we should also look to the Sentencing Guidelines for the measure of loss. In sentencing a defendant for fraud the district court must make a "reasonable estimate" of the victim's "loss." U.S.S.G. § 2B1.1 app. n. 3(C). The general rule in a case involving property obtained by fraud is that the measure of loss is "[t]he fair market value of the property unlawfully taken." *Id.* app. n. 3(C)(i). As noted above, the MVRA's purpose is to make the victims whole; conversely, the Sentencing Guidelines serve a punitive purpose, necessitating a different loss calculation scheme than the MVRA. *Compare United States v. Bae*, 250 F.3d 774, 777 (D.C. Cir. 2001) (noting that under the Sentencing Guidelines "[l]ost profit is an undesirable measure of loss" because it "would *penalize* frauds differently depending upon whether the victim is a consumer or producer") (emphasis added) *with United States v. Rice*, 38 F.3d 1536, 1544 (9th Cir. 1994) (holding under the VWPA that lost profits *are* permissible and determinable on the date of the taking for restitution purposes because the property had a "book price which includes a profit markup"). While there is little logic in increasing or decreasing a defendant's sentence as a result of unpredictable fluctuating values for misappropriated items in the punitive context, accounting for such fluctuations is necessary in making victims whole in the restitutionary context.

*Id.* at 1052 n.6.

Restitution clearly focuses on the *victim,* not the individual defendant. Restitution seeks to compensate the *victim* for all the *direct and proximate losses* resulting from the defendant's conduct, not only for the reasonable foreseeable losses. The purpose of restitution is to put the *victim* back in the position

Case 1:08-cr-00104-EJL Document 189 Filed 06/15/10 Page 14 of 14
Case: 09-30202 06/15/2010 Page: 14 of 14 ID: 7372066 DktEntry: 23-1

UNITED STATES v. GOSSI 8793

he or she would have been but for the defendant's criminal conduct. We previously explained:

> [t]he purpose of restitution is twofold: (1) *to restore the defrauded party to the position he would have had absent the fraud,* Restatement of Restitution [§] 1, Comments a, b, c, and d (1937); (2) and to deny the fraudulent party any benefits, whether or not foreseeable, which derive from his wrongful act. *Id.* [§] 1 Comment e, [§] 151 Comment c; *Janigan [v. Taylor,* 344 F.2d 781, 786 (1st Cir. 1965)]. Thus, where a person with knowledge of the facts wrongfully disposes of or acquires property of another and makes a profit thereby he is accountable for those profits. *Id.* [§] 1 Comment e, [§] 151 Comment f. When the property is of fluctuating value, such as stock, the injured party may be awarded an amount equal to the highest value reached by the stock within a reasonable time after the tortious act. *Id.* [§] 151 Comment c; *Myzel v. Fields,* 386 F.2d 718, 744 n.23, 745 (8th Cir. 1967).

*Nelson v. Serwold,* 687 F.2d 278, 281 (9th Cir. 1982) (emphasis added).

[7] Because the advisory Sentencing Guidelines and restitution to victims under the MVRA clearly focus on different aspects of the offense and serve different purposes, we reject Gossi's argument that we should look to the advisory Sentencing Guidelines for calculating the victim's losses.

**AFFIRMED.**